UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

JAMES P. ENGELS, | Chapter 13
Case No.: 12-60503

*Debtor*.

APPEARANCES:

BOND, SCHOENECK & KING, PLLC
*Attorney for Movant*
One Lincoln Center
Syracuse, NY 13202-1355

JOSEPH ZAGRANICZY, ESQ.

DAVID J. GRUENEWALD
*Attorney for Debtor*
P.O. Box 69
Manilus, NY 13104

DAVID J. GRUENEWALD, ESQ.

Honorable Diane Davis, United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

This contested matter is before the Court for decision upon motion of Clarkson University ("Clarkson") seeking entry of an order pursuant to 11 U.S.C. §§ 105, 362(d)(1) and 363 and Federal Rules of Bankruptcy Procedure 4001 and 6004 modifying the automatic stay to enforce a post-petition state court judgment directing specific performance by James P. Engels ("Debtor"); to compel Debtor to comply with the post-petition state court judgment requiring Debtor to obtain bankruptcy court approval for the sale of real property; and to compel Debtor (i) to sell certain real property located at 152 Maple Road in Potsdam, New York (the "Property"), pursuant to the terms of a certain asset purchase agreement and (ii) to consummate all transactions related to the same (the "Amended Motion," ECF No. 61).

Debtor filed a Voluntary Petition for chapter 13 relief under Title 11 of the United States Code[1] and a chapter 13 plan on March 23, 2012. (ECF No. 1.) Debtor thereafter filed three amended chapter 13 plans on October 29, 2012 (ECF No. 33), November 21, 2012 (ECF No. 45), and December 14, 2012 (ECF No. 49), the last of which was confirmed on January 24, 2013 (ECF No. 52). Debtor's plan is consistent with the chapter 13 model plan, use of which became mandatory in the Northern District of New York as of January 1, 2012.[2]

On May 16, 2014, during the second year of Debtor's plan, Debtor and Clarkson executed a post-petition asset purchase agreement, wherein Debtor agreed to sell the Property to Clarkson subject to Debtor obtaining bankruptcy court approval of the same (the "APA"). When Debtor failed to obtain this Court's approval of the APA within the time specified by its terms, Clarkson sought and obtained a judgment in St. Lawrence County dated July 23, 2014, therein "directing [Debtor's] specific performance of the [APA]" (the "Judgment," ECF No. 61, Ex. E). The Judgment, incorporating the terms of the APA, ordered Debtor to "specifically perform pursuant to Paragraph 10 of the [APA] by filing a motion within fourteen (14) days of the entry of this Judgment with the Bankruptcy Court seeking an order approving the terms and conditions of the APA." Debtor was further "specifically ordered to close such purchase at the offices of Bond, Schoeneck & King, PLLC pursuant to Paragraph 3 of the [APA] within seven (7) days of entry of an order from the Bankruptcy Court approving the terms and conditions of the [APA]" and to "sign and deliver a deed and any other documents necessary to complete the sale of [the Property] to Plaintiff Clarkson [] under the terms of the [APA] at such closing."

---

[1] 11 U.S.C. §§ 101–1532 (2012) (the "Bankruptcy Code"). Unless otherwise indicated, all further section references are to the Bankruptcy Code.

[2] *See* 2012 Public Notices, *Revised Model Chapter 13 Plan, Model Confirmation Order and Certification Pursuant to Local Bankruptcy Rule 3015-1*, UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF NEW YORK (September 7, 2012), http://www.nynb.uscourts.gov/?q=2012-public-notices.

Debtor thereafter failed to specifically perform pursuant to the Judgment within the mandated fourteen day period and Clarkson filed the Amended Motion with this Court on October 30, 2014, seeking relief from the automatic stay and an order compelling Debtor to comply with the terms of the APA. The Amended Motion was returnable on the Court's regular motion calendar in Utica, New York on December 9, 2014, and continued on February 10, 2015.[3] Debtor filed a response to the Amended Motion, *pro se*, on November 26, 2014 (the "Pro Se Response," ECF No. 67), and again, through counsel, on December 1, 2014 ("Counsel's Response," ECF No. 68). Clarkson filed a Reply Memorandum of Law on December 4, 2014 (the "Reply Memorandum," ECF No. 75). Hearing was held on December 9, 2014. Debtor thereafter filed a Reply, again *pro se*, on January 12, 2015 (the "Reply" ECF No. 81). Clarkson filed a Supplemental Memorandum of Law on January 30, 2015 (the "Supplemental Memorandum," ECF No. 83), which was argued on the February 10, 2015 hearing date. Having now considered the Amended Motion, the Pro Se Response, Counsel's Response, the Reply Memorandum, the Reply, the Supplemental Memorandum, and the parties' oral arguments, the Court now makes the following findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052 and denies the Amended Motion for the reasons set forth below.

## JURISDICTION

The Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), and 157(b)(1). This matter constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (G), and (N).

---

[3] Following oral argument on December 9, 2014, which was to be continued on January 13, 2015, the Court granted the parties a one month adjournment in order to attempt to settle the matter, or, in the alternative, to file further submissions in the event settlement discussions were unsuccessful.

**BACKGROUND**

Between August 2, 1988 and December 20, 2010, Debtor filed eleven Voluntary Petitions for chapter 13 relief and one Voluntary Petition for chapter 7 relief in the United States Bankruptcy Court for the Northern District of New York, all of which were dismissed. Debtor filed the instant Voluntary Petition for chapter 13 relief on March 23, 2012.

On Schedule A of the March 23, 2012 Voluntary Petition, titled "Real Property," Debtor identified an ownership interest in the subject Property, which he valued at $90,000.00 "because Clarkson College [sic] [was] interested in buying the property," notwithstanding an assessed value of $52,000.00. (ECF No. 1.) Debtor's chapter 13 plan (the "Plan," ECF No. 49), which provides a 100% dividend to unsecured creditors, was filed on December 14, 2012, and confirmed by the Court on January 24, 2013 (the "Confirmation Order," ECF No. 52). Although amended three times prior to confirmation, the Plan neither identifies the Property nor notices Debtor's intent to sell the same, despite Debtor's valuation of the Property in Schedule A. The Confirmation Order, however, provides that "no article of property, real or personal, with any value of more than $2,500.00 may be sold, transferred or otherwise disposed of, without prior order of this court."

The Confirmation Order further requires Debtor to pay all allowed claims in full over the sixty month term and identifies taxes owed to St. Lawrence County, the New York State Department of Tax and Finance, and the Internal Revenue Service, totaling $126,149.80 together with statutory interest. The Plan and Confirmation Order do not, however, identify the judgment lien held by the Albert Jakobson Trust against Debtor in the amount of $38,492.83, plus statutory interest. Furthermore, the chapter 13 trustee indicates that there are additional creditors who have not been listed in Debtor's schedules and accordingly, the trustee has a filed a second motion to

dismiss or convert for unfeasibility (the "Motion to Dismiss," ECF No. 105), which is being carried pending the Court's issuance of this Memorandum-Decision and Order.

In October 2012, just prior to the filing of Debtor's first amended plan, Debtor's real estate broker, Sandstone Realty, contacted Clarkson to ascertain whether Clarkson would be interested in purchasing the Property. Thereafter, between October 2012 and May 16, 2013, Debtor and Clarkson negotiated the sale of the Property to Clarkson. The Plan was confirmed on January 24, 2013. On or about May 16, 2013, Debtor and Clarkson executed the APA, a post-petition contract for sale, subject to this Court's approval.

The APA provided that Debtor was to sell the Property to Clarkson for $150,000.00 and that Debtor was not to operate his automotive repair business within a certain distance of Clarkson's campus, as defined by the APA, in exchange for a payment of $175,000.00, resulting in total consideration in the amount of $325,000.00. On the date of execution, Clarkson delivered to Debtor a $30,000.00 deposit, which Debtor was to place in escrow until closing.[4]

The APA also provided for the treatment of certain environmental concerns associated with the Property. Debtor was required to remove underground storage tanks from the Property and obtain a Phase I Environmental Site Assessment (the "Phase I Assessment"). Clarkson, at its own expense, was required to obtain a Phase II Environmental Site Assessment (the "Phase II Assessment"), if necessary. The Phase I Assessment revealed petroleum-impacted soil from surface spillage of petroleum product on the property, identified by New York State Department of Environmental Conservation's ("NYSDEC") July 1995 records as Petroleum Spill No. 95-05218. Thereafter, Clarkson hired Atlantic Testing Laboratories to conduct the Phase II

[4] Debtor failed to disclose or otherwise acknowledge receipt of the $30,000.00 deposit in the context of his chapter 13 bankruptcy, which serves, in part, as a basis for the trustee's Motion to Dismiss. The Court notes Debtor's lack of candor with respect to the same.

assessment, which revealed subsurface soil and groundwater petroleum contamination. NYSDEC's spill file still remains open and it is estimated that the Property will require remediation at a cost of $158,400.00.

The APA further provided that Debtor would bear the remediation costs unless Clarkson was willing to accept the Property with the outstanding environmental issues, to be credited against the purchase price at closing. On or about December 16, 2013, Clarkson notified Debtor that Clarkson would accept a reduced credit of $50,000.00 against the purchase price to remediate the environmental issues. This agreement resulted in a net purchase price of $265,000.00, less the $30,000.00 deposit, which Debtor had already received.

Debtor did not seek this Court's approval of the APA within fourteen days of its execution, as required by the terms of the APA. As a result, Clarkson commenced an action in state court, seeking specific performance of Debtor's obligation to obtain bankruptcy court approval of the APA and to consummate the transaction. On July 23, 2013, the state court entered the Judgment, thereby sending the parties back to this Court for further adjudication.

Debtor did not comply with the Judgment directing him to file a motion seeking bankruptcy court approval, and although Debtor filed an appeal of the Judgment to the New York State Appellate Division, Third Department, he failed to perfect the appeal[5] and has not obtained a stay pending the appeal. (ECF No. 76.) Therefore, on October 30, 2014, Clarkson filed the Amended Motion seeking the relief requested herein. Clarkson supplemented the Amended Motion with the Declaration of George Giordano, the director, risk management, and purchasing and payroll personnel for Clarkson University, wherein Giordano stated that, while Debtor never advised him

[5] At the August 11, 2015 hearing on the Motion to Dismiss, counsel for Clarkson indicated that Debtor is in fact pursuing an appeal to the New York State Supreme Court, Appellate Division, Third Department, although counsel confirmed that Debtor has not obtained a stay pending appeal.

of his bankruptcy filing during the seven months of negotiation, Giordano learned of the filing through a National Bankruptcy Search performed prior to execution of the APA. (ECF No. 57.) Clarkson also supplemented the Amended Motion with the Declaration of Virginia C. Robbins, advising the Court of the environmental concerns in connection with the Property, including subsurface soil and groundwater contamination and the associated costs of remediation. (ECF No. 58.)

Debtor filed the Pro Se Response on November 25, 2014, requesting an adjournment of the hearing on the Amended Motion scheduled for December 9, 2014, in order to allow Debtor time to seek representation and to obtain a signed stipulation for a stay pending appeal to the New York State Supreme Court, Appellate Division, Third Department. As an exhibit to the Pro Se Response, Debtor attached a letter purportedly mailed to Harris Beach LLC, dated November 12, 2014, wherein Debtor assessed the merits of his case in support of his request for representation in connection therewith. On December 1, 2014, Debtor's counsel of record, Attorney Gruenewald, filed Counsel's Response, wherein he adopted the Pro Se Response and additionally argued that counsel had not negotiated the terms of the APA, counsel had no knowledge of the same at the time of execution, and that the chapter 13 trustee had not approved the APA.

On December 2, 2015, Clarkson filed a letter on the docket, indicating its assumption that Counsel's Response mooted Debtor's request for an adjournment in the Pro Se Response, such that the request was withdrawn, or, in the alternative, requesting that the Court deny Debtor's request for an adjournment. (ECF No. 72.)

Debtor thereafter wrote a letter, *pro se*, to the Court, dated December 3, 2014, opposing Clarkson's request that the Court deny the adjournment of the hearing scheduled for December 9, 2014. (ECF No. 78.) Debtor indicated that while Attorney Gruenewald was counsel of record,

Debtor was seeking to retain new counsel given the complexity of the case. Debtor also addressed other issues, including, generally, the subject of Debtor's communications with Clarkson's counsel, a dispute regarding an unrelated judgment, a dispute regarding an unrelated proof of claim, and a dispute regarding estimated remediation costs.

On December 4, 2015, Clarkson filed the Reply Memorandum, wherein Clarkson contended that: (1) Debtor is barred by the doctrines of res judicata and collateral estoppel from re-litigating the issues decided by the state court in issuing the Judgment in opposing the Amended Motion; and (2) that Debtor was free to enter into, post-petition, the APA with Clarkson, absent approval from the chapter 13 trustee, pursuant to § 1303. Further, Clarkson, through the Declaration of Suzanne M. Messer, Esq., opposed Debtor's request for an adjournment on the grounds that Debtor's substantive opposition mooted the request for an adjournment. (ECF No. 76.)

Hearing was held on January 9, 2015, and adjourned until January 13, 2015. On January 12, 2015, Debtor filed the Reply, wherein he requested an adjournment of the hearing scheduled for January 13, 2015 until February 12, 2015. Clarkson consented to the adjournment, and requested that all responsive pleadings regarding the same be filed by January 30, 2015.

On January 30, 2015, Clarkson filed the Supplemental Memorandum, wherein Clarkson reiterated that the APA is a post-petition contract, such that enforcement is not barred by the automatic stay. Debtor did not file anything further.

The Court heard oral argument on the Supplemental Memorandum on February 10, 2015, on which date the matter was fully submitted.

**ARGUMENTS**[6]

Clarkson primarily seeks relief under §§ 362 and 363,[7] arguing that: (1) cause exists for modification of the stay pursuant to § 362(d)(1); (2) the proposed sale is in the best interest of Debtor, his creditors, and the estate in accordance with the requirements of § 363(b); and (3) Debtor was permitted to sell assets free and clear of liens pursuant to § 363(f).[8]

Clarkson contends that "cause" exists for modification of the stay within the meaning of § 362(d)(1) where Clarkson holds a post-petition Judgment directing Debtor to specifically perform pursuant to the terms of APA and obtain bankruptcy court approval of the sale of the Property. Thus, a finding of "cause" relating to the same is two-fold, premised on Clarkson's arguments that (1) the execution of the post-petition APA was not a violation of the automatic stay, and (2) obtaining the Judgment directing Debtor's specific performance on the APA was not a violation of the automatic stay.

Clarkson argues that Debtor was permitted to execute the APA on May 16, 2013, without the approval of the chapter 13 trustee[9] pursuant to § 1303, *In re Jones*, 505 B.R. 229, 231 (Bankr. E.D. Wisc. 2014) (section 1303 allows a chapter 13 debtor to sell real property just as a bankruptcy trustee could), where Debtor's chapter 13 plan had already been confirmed and the APA expressly required approval by this Court.

---

[6] The Court has considered the parties' arguments in total and, to the extent not discussed herein, finds them to be without merit.

[7] Clarkson contends that where § 363 applies, the Court must employ the same standard in cases arising under chapters 7, 11 and 13.

[8] While it is typically held that "[a] court may not authorize a sale free and clear after plan confirmation [pursuant to § 363(f)], as the property revests upon confirmation in the reorganized debtor and is no longer property of the estate," 3-363 COLLIER ON BANKRUPTCY ¶ 363.06, the model plan adopted by the Northern District of New York specifically provides that "property shall not revest in Debtor until completion of the plan."

[9] The Court separately notes that, pursuant to the Confirmation Order, the sale of property with a value of *less than* $2,500.00 requires consent of the chapter 13 trustee, while the sale of property with a value of *more than* $2,500.00 requires Court approval. Where the Property at issue has a value in excess of $2,500.00, the failure to obtain consent of the chapter 13 trustee is of no consequence.

Absent Debtor's motion seeking Court approval of the APA, Clarkson maintains that it was permitted to obtain the Judgment directing Debtor's specific performance based on the distinction between actions to *obtain* a judgment and actions to *enforce* a judgment. *Connor v. Howe*, 344 F. Supp. 2d 1164, 1172 (S.D. Ind. 2004); *My Favorite Muffin Too, Inc. v. DK Holdings, Inc*. 61 F. Supp. 2d 781, 783 (N.D. Ill. 1999). Clarkson cites numerous cases for the proposition that the automatic stay does not bar litigation of an action against a debtor based upon a claim that arose after the filing of the petition. *See e.g., Connor v. Howe*, 344 F. Supp. 2d 1164; *Turner Broadcasting Sys., Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 999 (N.D. Ga. 1983); *Acevedo v. Van Doren Plastic Mach. Co.*, 68 B.R. 495 (Bankr. E.D.N.Y. 1986). Consequently, because Clarkson's state court action sought to obtain judgment on a post-petition claim, but not necessarily enforce it, Clarkson argues that it is not void as a violation of the automatic stay.

The effective relief Clarkson seeks, however, is sought under § 363. Clarkson contends that if the Court finds the APA is the highest and otherwise best offer for the Property, and is in the best interest of creditors pursuant to § 363(b), Debtor must be compelled to comply with the terms of the APA and consummate the transaction pursuant to § 363(f). In support of the requested relief, Clarkson cites a leading bankruptcy treatise for the proposition that "a debtor can be compelled to file a motion to approve a settlement even if the debtor has changed its mind." 10 COLLIER ON BANKRUPTCY ¶ 9019.02A (Alan N. Resnick & Henry J. Sommer, eds. 16th ed.). "The fact that a contract is entered into subject to approval of the bankruptcy court does not create a right of unilateral repudiation pending that approval." *Musselman v. Stanonik (In re Seminole Walls & Ceilings Corp.)*, 388 B.R. 386, 396 (M.D. Fla. 2008).

Debtor's opposition to Clarkson's motion is substantively limited on the merits. Notwithstanding Debtor's active participation in this case *pro se*, neither Debtor nor counsel filed

a single memorandum of law in support of Debtor's position. Rather, the record evidences Debtor's repeated requests for adjournment and other delay tactics.

**DISCUSSION**

The Court notes that there is no basis to modify the automatic stay if the Court cannot compel a chapter 13 debtor to consummate the sale of property of the estate in the first instance. *See* 8-1303 COLLIER ON BANKRUPTCY ¶ 1303.03 ("The use, sale or lease of property of the estate by . . . the chapter 13 debtor, whether or not in the ordinary course of business, must be consistent with any relief from the automatic stay obtained pursuant to subsections 362(c), (d), (e) and (f)."). While Clarkson contends that sale of the Property is authorized by § 363(b) where such sale is in the best interests of Debtor, his creditors, and the estate, the Court has no sale motion by Debtor and in fact, Debtor opposes the sale. Thus, the primary issue before this Court is whether a bankruptcy court can compel a chapter 13 debtor to sell property of the estate in the absence of a sale motion by Debtor himself.

Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the state." 11 U.S.C. § 363(b). In determining whether to approve a § 363 sale, the bankruptcy court must make a finding that "the proposed sale is fair and equitable, that there is a good business reason for completing the sale, and that the transaction is in good faith." *In re Phoenix Steel Corp*., 82 B.R. 334, 335 (Bankr. D. Del. 1987). In a chapter 13 case, however, the right to sell property of the estate is exclusive to the debtor pursuant to § 1303 [which specifically incorporates § 363(b)]. *In re Hammons*, No. 10-50025-C, 2010 Bankr. LEXIS 2981, at *6 (Bankr. W.D. Tex. Aug. 27, 2010) (In a chapter 13 case, section 1303 expressly permits a chapter 13 debtor to employ the rights and powers of a trustee under § 363(b), (d), (e), (f), and (l)). This right is exclusive in that the "chapter 13 debtor, rather than the trustee, is the only person with the power to sell such property under the statute." *In re*

*Moore,* No. DM 15-90015, 2015 Bankr. LEXIS 1284, at *2-3 (Bankr. W.D. Mich. Mar. 30, 2015). "Section 1303[, however,] operates in conjunction with other provisions of the Code, such as . . . section 1306[(b)], which gives the debtor the exclusive right to possession of property of the estate, unless a confirmed plan, or order confirming a plan, provides otherwise." 8-1303 COLLIER ON BANKRUPTCY ¶ 1303.01. Thus, a chapter 13 debtor not only possesses the exclusive right to sell property of the estate pursuant to § 1303, but has the exclusive right to possession of the same pursuant to § 1306, unless the plan or order confirming the plan provides otherwise.

In this case, after filing his petition, Debtor, through his real estate broker, contacted Clarkson to solicit the sale of the Property. Debtor and Clarkson negotiated the sale of the Property over the course of several months. On May 16, 2013, after Debtor's plan had been confirmed, Debtor executed the APA, which expressly required bankruptcy court approval of the sale. Thus, while Debtor had the right to execute the APA pursuant to §§ 1303 and 1306, he was limited by the terms of the APA, premised on the Confirmation Order, which provides that "no article of property, real or personal, with any value of *more than* $2,500.00 may be sold, transferred or otherwise disposed of, without prior order of this court[]." Debtor's right to sell the Property was therefore contingent upon Debtor seeking the approval of this Court. Notwithstanding his acceptance of the $30,000.00 deposit, however, Debtor failed to make such motion.

Clarkson relies on the Judgment directing Debtor's specific performance in obtaining bankruptcy court approval and consummating the sale of the Property pursuant to the terms of the APA. However, where Debtor's confirmed Plan provides that "[a]ll property of the debtor's chapter 13 estate shall remain property of the estate and under this Court's jurisdiction until the Plan is completed," the state court had limited concurrent jurisdiction to issue such judgment with respect to property of the estate, which is within the sole province of this Court pursuant to 28

U.S.C. § 1334(e) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate . . . .").

> Once a bankruptcy proceeding begins in one court, the concurrent jurisdiction of other courts is partially stripped. In addition to exclusive jurisdiction over the bankruptcy proceeding itself, "the district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e). However, the exclusivity of the bankruptcy court's jurisdiction reaches only as far as the automatic stay provisions of 11 U.S.C. § 362. That is, if the automatic stay applies to an action directed at the debtor or its property, jurisdiction is exclusive in the bankruptcy court. If the automatic stay does not apply—e.g., if an exception to the stay covers the action in question—the bankruptcy court's jurisdiction is concurrent with that of any other court of competent jurisdiction. And if the bankruptcy court grants relief from the stay with respect to certain property or claims, *see* 11 U.S.C. § 362(d), (e), (f), the bankruptcy court retains jurisdiction over those matters, although its jurisdiction is concurrent with that of other courts of competent jurisdiction.

*Chao v. Hosp. Staffing Servs., Inc*., 270 F.3d 374, 383 (6th Cir. 2001) (internal case citations omitted). Thus, while the state court appropriately decided the validity of the post-petition APA, this Court cannot ignore the state court's failure to consider the implications of § 362(a)(3) in directing Debtor to sell property of the estate. *See* 11 U.S.C. § 362(a)(3) (the automatic stay applies to *any act to obtain possession* of property of the estate . . . or to exercise control over property of the estate). Accordingly, this Court is not bound by the Judgment as it applies to Debtor's bankruptcy proceedings herein.

Clarkson alternatively argues that *this* Court may compel debtor to consummate the transaction, relying on both cases and treatises which discuss judicial enforcement of settlements made pursuant to Bankruptcy Rule 9019. *Musselman v. Stanonik (In re Seminole Walls & Ceilings Corp.),* 388 B.R. 386, 396 (M.D. Fla. 2008) ("The fact that a contract is entered into subject to

approval of the bankruptcy court does not create a right of unilateral repudiation pending approval."); *In re Metaldyne Corp.*, 409 B.R. 661, 669 (Bankr. S.D.N.Y. 2009); 10-9019 COLLIER ON BANKRUPTCY ¶ 9019.02A ("[A] debtor can be compelled to file a motion to approve a settlement even if the debtor has changed its mind."). While Clarkson contends that Debtor may be compelled to consummate the APA, as if it were a settlement under Bankruptcy Rule 9019, its reasoning is flawed. As the court noted in *Seminole Walls & Ceilings Corp.*, "[t]here is a fundamental difference between whether parties may ask a court to enforce a settlement agreement in advance of bankruptcy court approval and therefore prior to any obligation to perform under the agreement and whether the parties reached a valid and binding agreement subject only to court approval." 388 B.R. at 392. Here, the APA is unenforceable absent bankruptcy court approval insofar as it directs Debtor to sell property of the estate.[10] While §§ 1303 and 1306 give a chapter 13 debtor the exclusive right to sell property of the estate and the exclusive right to possession of the same, respectively, Clarkson has not provided, and this Court cannot find, a single case authorizing the bankruptcy court to compel a chapter 13 debtor in possession to sell real estate, which constitutes property of the estate, pursuant to a post-petition contract. Although Clarkson possesses certain rights as a post-petition creditor, those rights are limited with respect to property of the estate during the pendency of Debtor's chapter 13 case. This principle is embodied in case law as follows:

> The right to undertake collection activity, including filing a lawsuit, to collect a post-petition debt does not allow all collection activities. The automatic stay prevents any act to create, perfect or enforce any lien against property of the estate, and any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. [11 U.S.C.] §§ 362(a)(4) and (a)(3), respectively. Consequently, a post-petition creditor who has the right to initiate a suit against a debtor and obtain a judgment for a post-petition debt without

[10] The *Musselman* court found "inapposite . . . those cases holding [that] a settlement or compromise is unenforceable in advance of approval by the bankruptcy court—an elementary conclusion with which the Court [found] no dispute." *Id.* at 392.

> violating the automatic stay may not have recourse to execute on all assets that would have been, but for the filing of the chapter 13 petition, property of the debtor. *Recourse is limited to property that is not property of the estate.*

*In re Reynard*, 250 B.R. 241 (Bankr. E.D. Va. 2000) (emphasis added); *see First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 177 n.16 (2d Cir. 2004) ("The reality . . . under Chapter 13 is that the debtors are the true representatives of the estate and should be given the broad latitude essential to control the progress of their case.") (citing *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2d Cir. 1998) (quoting *In re Freeman*, 72 B.R. 850, 854 (Bankr. E.D. Va. 1987)); *In re Hudson*, 168 B.R. 448, 449 (Bankr. S.D. Ga. 1994); *In re Shuman*, 122 B.R. 317, 318 (Bankr. S.D. Ohio 1990); *In re Woodall*, 81 B.R. 17, 18 (Bankr. E.D. Ark. 1987).

Absent Debtor's motion seeking approval of the APA, this Court cannot force Debtor to sell property of the estate while he remains in chapter 13. While the Second Circuit has noted that bankruptcy courts must have "broad discretion and flexibility . . . to enhance the value of the estates before it," *Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239, 246-247 (2d Cir. 2014) (quoting *Consumer News & Bus. Channel P'ship v. Fin. News Network Inc. (In re Fin. News Network Inc.)*, 980 F.2d 165, 169 (2d Cir. 1992)), and has emphasized that the "bankruptcy court's 'principal responsibility . . . is to secure for the benefit of creditors the best possible bid,'" *Id.*, the bankruptcy court cannot exercise such discretion absent a motion by Debtor.

The Court notes the uncomfortable outcome of this dispute and agrees with Clarkson that Debtor's consummation of the transaction pursuant to the APA appears to be in the best interest of creditors where the sale would render Debtor's plan, which is currently pending dismissal for unfeasibility, a 100% plan that would pay all creditors in full. The Court further acknowledges that the sale to Clarkson would appear to be in the best interest of Debtor, who now risks the loss of bankruptcy protection, faces a future claim for the return of the $30,000.00 deposit paid by

Clarkson, and bears responsibility for the environmental remediation of the Property at an estimated cost of $158,400.00. However, absent a § 363 motion by Debtor, there is no basis in law to compel Debtor to sell the Property to Clarkson so long as Debtor remains in chapter 13.

**CONCLUSION**

The Court does not condone Debtor's behavior in this case, particularly as a repeat filer, and cautions Debtor with respect to future filings, in the event this case is dismissed. Unfortunately, the outcome of this dispute is mandated by the current state of the law. Accordingly, it is hereby

ORDERED that Clarkson's motion for relief pursuant to §§ 105, 362(d)(1) and 363 is denied.

IT IS SO ORDERED.

Dated: September 3, 2015
Utica, New York

/s/ Diane Davis
DIANE DAVIS
United States Bankruptcy Judge